# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| AXCESS INTERNATIONAL, INC., | § | |
| Plaintiff, | § § § | |
| v. | § § | No. 2:16-CV-01360-JRG-RSP (lead case) |
| AMAG TECHNOLOGY, INC., | § § § | |
| Defendant. | § | |

## CLAIM CONSTRUCTION OPINION AND ORDER

**I.  BACKGROUND**

These consolidated patent cases concern U.S. Patent 7,286,158, which is entitled "Method and System for Providing Integrated Remote Monitor Services." The '158 Patent purports to teach technology that "allow[s] a subscriber to remotely monitor, evaluate, and control operations at a facility." '158 Patent at 1:50–52.

More specifically, the patent is directed to integrating the use of radio frequency identification (RFID) with video data to provide video verification of an event, such as authorized access (or attempted unauthorized access) to a secure area. *Id.* at 9:22–24. This allows a remote user to view the video and confirm the identity of the person attempting access.

As an example, FIG. 4 of the patent (below) embodies asserted independent claim 14. In step 200, a radio response is elicited from an RFID tag at an access door of a secure area of a monitored facility 14. At step 202, one or more video images of the wearer of the

RFID tag are obtained from a camera covering the access door. The video image may be obtained in response to the radio response, authorized access, or an attempt at unauthorized access. At step 204, the method determines whether the requested access is authorized based on the radio response from the RFID tag. If access is authorized, step 206 opens the access door. But regardless of whether the door is opened, step 208 stores the video image with the RFID action to provide video verification of the event. *See generally id.* at 9:13–35.



FIG. 4

Claims 14–18, which are the only asserted claims, include the terms the parties proffer for construction (bolded):

> 14. A method for providing identity verification for access to a secure area, comprising:

> **eliciting a radio response from a radio frequency identification (RFID) tag** at an access door of a secure area;
>
> **determining whether access by a wearer of the RFID tag to the secure area is authorized** based on the radio response;
>
> **recording a video image** of the wearer of the RFID tag at the access door; and
>
> **controlling access** to the door to provide access to the secure area by the wearer only if access by the wearer is authorized.

15. The method of claim 14, further comprising **recording the video image** in response to authorized access.

16. The method of claim 14, further comprising **recording the video image** in response to an attempt at unauthorized access.

17. The method of claim 14, further comprising **recording the video image** in response to the radio response from the RFID tag.

18. The method of claim 14, further comprising **recording a series of video images** of the wearer of the RFID tag at the access door.

## II. DISCUSSION

### A. "wearer of the RFID tag" (claims 14 & 18)

The parties have agreed this claim limitation should be construed as "person possessing the RFID tag." J. Claim Constr. & Prehearing Statement [Dkt. # 58] at 1. The Court therefore **ADOPTS** that construction.

B.  "recording a video image," "recording the video image," and "recording a series of video images" (all claims)

| Plaintiff's<br>Proposed Construction | Defendants'<br>Proposed Construction |
|---|---|
| recording a graphic image | obtaining a video frame[1] |

### 1. Whether "recording" equates only to "obtaining"

First, the parties agree that "recording" at least means "obtaining." Plaintiff, however, contends "recording" must mean more. At the claim constructing hearing, Plaintiff agreed "recording" could properly be construed as "obtaining and storing."

To support their position that "recording" means only "obtaining," Defendants note the specification recites already recorded "combined tag and video data can be stored for later review or transmitted live." '158 Patent at 7:1–9. Defs.' Resp. Br. [Dkt. # 61] at 6. Thus, say Defendants, neither storing nor live transmission is required by the "recording" step because, at least according to this excerpt, the tagged activation event has already been recorded by the time it is stored or transmitted live. *Id.*

The specification, however, clearly distinguishes the acquisition—e.g., the "obtaining"—of video data from the storage, transmission, and use of that data in furtherance of the invention's purpose. For example, "data is *collected* [i.e., obtained] from the facility

---

[1] Defendants originally proposed a construction equating "recording" with "obtaining and storing or transmitting live." But during the claim construction hearing, Defendants agreed such a construction effectively reduces to only "obtaining" given that an obtained video image will either be stored or transmitted live according to the invention's purpose.

[and then] *transmitted* over the Internet to a central host site at which the data is *stored* and analyzed and may be accessed by the subscriber." '158 Patent at 2:25–30; *see also, e.g.*, *id.* at 2:36–39 ("video, audio, and other data is *collected* [i.e., obtained] at a business location and may be *viewed live, processed, and stored* at the business location"); *id.* at 3:62–4:1 ("The monitored facilities 14 each include a data collection system that *collects* video, audio, location, and other data at the facility 14 . . . . The data, once collected, may be *viewed live, processed and stored* at the monitored facility 14, or retrieved and processed at the central host 16."); *id.* at 11:14–15 (reciting, in claim 1, both "receiving and storing video data"); *id.* at 12:33–38 (reciting, in claim 19, "obtaining a video image" and then electronically transmitting the video image); *id.* at [57] ("[v]ideo data is received from a video system at the facility and also stored").

In light of this clear distinction, "recording" must mean something more than the mere acquisition or obtaining of video data. Otherwise, the claims could not provide for the contemporaneous transmission or later review of that data. Because the parties acknowledge FIG. 4 embodies claim 14, the Court concludes the "storing" step of FIG. 4 is that "something more." The Court therefore construes "recording" to mean "obtaining and storing."

### 2. Whether "video image" means "graphic image" or "video frame"

Plaintiff urges the Court to construe "video image" as "graphic image" because "the video may be black and white video, color video, infrared video, or any other suitable visual information capable of providing information at a scene." '158 Patent 63–65. Plaintiff

hinges its position on "other suitable visual information," arguing that phrase is broad enough to morph "video image" into "graphic image." Pl.'s Opening Br. [Dkt. # 59] at 7.

But "graphic image" is not used in the patent. Moreover, whatever the "other suitable visual information" might be, it clearly relates to video. Indeed, the phrase on which Plaintiff relies actually modifies "video." *Id.* at 5:63–65 ("the video may be . . . any other suitable visual information capable of providing information at a scene"). Plaintiff's proposed construction, however, removes the notion of video not only from the limitation, but from the claim.

Defendants, on the other hand, urge the Court to construe "video image" as "video frame," but provide no compelling reason for why such a construction is necessary. For example, they do not explain why a person with ordinary skill in the art would construe "image" in that manner. Nor does the passage relied on by Defendants make their position any clearer.

During the November 2 claim construction hearing, the parties agreed that "video image" in the asserted claims could properly be construed as "an image from a video cam-era." Given that the agreement resolves the dispute between the parties as to this sub-issue, the Court adopts that construction. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").

* * *

In light of the foregoing, the Court concludes "recording a video image" means "obtaining and storing an image from a video camera."

### C. "controlling access to the door to provide access to the secure area by the wearer only if access by the wearer is authorized" (claim 14)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| authorizing the wearer based on the radio response | preventing unauthorized access |

The parties dispute whether this limitation requires control of access to the door distinct from control of the door itself. According to Plaintiff, "[t]he specification makes it clear that 'access' to the secured area is granted 'based on the response from the RFID tag.'" Pl.'s Opening Br. [Dkt. # 59] at 11 (citing '158 Patent 2:10–14). Defendants contend the limitation means access to the door itself is somehow controlled. Defs.' Resp. Br. [Dkt. # 61] at 9–11.

Defendants particularly rely on FIG. 2. Prior to entering vault room (62), for example, the wearer of the RFID tag must first enter into the stock area (60) through access door (46) and therefore, access to door (80) is controlled before the system provides access to the vault room (62). This, say Defendants, reflects the limitation's requirement for two distinct "accesses."

But FIG. 4, which Defendants acknowledge embodies claim 14, does not reflect multiple layers of access. Instead, FIG. 4 simply describes that the access door is opened.

The Court concludes a person having ordinary skill in the art[2] would recognize from the specification that "access" to the access door would be available to persons both authorized and not authorized to access the secure space. It is not, after all, access to the door that is the point of the invention, but rather access to the secure space on the other side of the door. And while the written description never refers to "access to the door," it refers multiple times to controlling or opening the access door. *See, e.g.*, '158 Patent at 8:51–56 ("this enables an operator at the central host 16 to *control access doors* at the monitored facilities 18 to allow ingress and egress of employees and other personnel. This subscriber 18 may use the remote access controller 190 to similarly *control access doors* at the monitored facility 18"); *id.* at 9:27–29 ("If access [to the secure area] is authorized, the Yes branch of decisional step 204 leads to step 206 in which the *access door is opened*."); *id.* at 10:28–30 ("Next at decisional step 314, if the subscriber grants the request, the Yes branch leads to step 316 in which the access door is remotely opened.").

The Court concludes "controlling access to the door" means "controlling the access door." Plaintiff did not object to this construction during the hearing.

**D.** **"eliciting a radio response from a radio frequency identification (RFID) tag" (claim 14)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| plain meaning | upon receiving a radio signal, an RFID tag sends a radio response |

---

[2] The parties agree as to the definition of a person having ordinary skill in the art. Pl.'s Opening Br. [Dkt. # 59] at 6; Defs.' Resp. Br. [Dkt. # 61] at 4.

The parties dispute whether the "eliciting" step must relate to receipt of a radio signal by the RFID tag. Defendants contend "eliciting" will likely be misunderstood by a lay jury to cover modes of operation that do not correspond to how RFID technology works. Defs.' Resp. Br. [Dkt. # 61] at 12. Plaintiff replies Defendants' construction is improper because the response could be elicited via contact, infrared signal, sound, or other means. Pl.'s Sur-Reply [Dkt. # 62] at 6–7.

The Court concludes Defendants' proposed construction improperly limits the manner by which the radio response may be elicited. For one, the passage on which Defendants rely is limited to a particular embodiment. Moreover, Defendants' proposed construction conflicts with the specification's description that some RFID tag technology calls for physical contact with a reader. '158 Patent at 4:52–55 ("In one embodiment, the automatic location identification technology . . . gathers data by requiring assets to physically touch a reader . . . .").

The Court concludes the "eliciting" step is not limited by the '158 Patent to the receipt of a radio signal. No further construction is necessary.

### E. "determining whether access by a wearer of the RFID tag to the secure area is authorized" (claim 14)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| plain meaning | using the radio response from the RFID tag to determine whether the wearer of the RFID tag has approval to enter the secure area |

Here, Defendants claim ambiguity as to whether "based on the radio response" modifies "authorized" or whether it modifies "determining." Defs.' Resp. Br. [Dkt. # 61] at 13. Defendants contend only the latter of these readings is proper. *Id.* Plaintiff replies that such ambiguity is manufactured by Defendant and that no such construction is required. Pl. Reply. [Dkt. # 62] at 8. Regardless, Plaintiff agrees this limitation already requires that access be determined based on the radio response. *Id.* at 9 ("There is no need to construe the claim as proposed by Defendants, since the claim already states that the determination is made 'based on the radio response.'").

There is no dispute here. The parties agree, as does the Court, that "based on the radio response" refers to "determining."

During the claim construction hearing, the parties agreed this term could properly be construed as "determining, based on the radio response, whether access by a wearer of the RFID tag to the secure area is authorized." The Court therefore adopts that construction.

### F. The Order of the Method Steps of Claim 14

Finally, the parties dispute whether the steps of claim 14 must be performed in the recited order. Plaintiff contends the '158 Patent implicitly requires as much. Pl.'s Supp. Br. [Dkt. # 68] at 2–3; *see also* Pl.'s Reply in Support of Supp. Br. [Dkt. # 80]. While Defendants agree the "eliciting," "determining," and "controlling" steps must occur in the recited order, they argue the "recording" step can be performed any time. Defs.' Resp. to Pl.'s Supp. Br. [Dkt. # 73] at 2–5.

As a general rule, "a claim requires an ordering of steps when the claim language,

as a matter of logic or grammar, requires that the steps be performed in the order written, or the specification directly or implicitly requires an order of steps." *See Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1398 (Fed. Cir. 2014) (internal quotation marks omitted). Neither of those conditions applies here.

In the claims, the "recording" limitation is not temporally tied to any other claim language. Contrast that with claims 15–17, which expressly recite the "recording" is *in response* to an event. Thus, not only does the claim language fail to support Plaintiff's position, the doctrine of claim differentiation gives rise to a presumption that supports Defendants' position. *See, e.g.*, *Sunrace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1302–03 (Fed. Cir. 2003) (noting claim differentiation "is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim"). Like claims 15–17, claim 19 expressly requires the obtaining step to occur after the determining step. So while the patentee clearly understood a temporal relationship between some claim limitations might be valuable, claim 14 is devoid of such a relationship.

As for the specification, Plaintiff does not identify any disclaimer, any required order of steps, or any prosecution history indicating the "recording" step *must* be performed at a particular time relative to the other steps.

Plaintiff does, however, argue its position is necessary to accomplish the invention's purpose, which is to enable a remote viewer "to confirm the identity of the wearer" of the

RFID tag associated with an event. Pl.'s Reply in Support of Supp. Br. [Dkt. # 80] at 4; '158 Patent at 2: 12–13. But the Court is unconvinced the "recording" step (or the "obtaining" sub-step) could not be performed just before the eliciting step, or just after the controlling step, and still accomplish that purpose.

The Court concludes nothing in the claims or specification requires the "recording" step—or, for that matter, the "obtaining" sub-step—to be performed simultaneously with or after the "eliciting" step or before the "controlling" step.

## III. ORDER

The Court **ORDERS** each party not to refer, directly or indirectly, to its own or any other party's claim construction positions in the presence of the jury. Likewise, the Court **ORDERS** the parties to refrain from mentioning any portion of this opinion, other than the actual positions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the positions adopted by the Court.

**SIGNED this 10th day of November, 2017.**

*(signature)*
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE